IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| NORMA E. LOPEZ, | ) | 4:08CV3091 |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| ROBERT HOUSTON, and STATE OF NEBRASKA, | ) | |
| Respondents. | ) | |

Even though it appears that the statute of limitations has run long ago in this habeas case, the court previously denied Respondents' Motion for Summary Judgment. (Filing Nos. 10 and 23.) The court suggested that Respondents might wish to file specific affidavits with their answer targeted at Petitioner's assertion that the statute of limitations should be tolled due to her alleged illiteracy and the claimed failure of Nebraska to provide illiterate female inmates with legal assistance. *See, e.g., Earl v. Fabian*, 556 F.3d 717, 727 (8th Cir. 2009) (holding that, in a habeas case challenging a murder conviction, where the petitioner was sentenced to life in prison, remand for further development of the record was required to determine whether pro se petitioner was entitled to statutory tolling of the limitations period based on the claim of a state-created impediment).

Respondents were also ordered to answer the Petition, submit all the relevant state court records and brief all matters germane to this case including questions relating to procedural default and the merits. Petitioner was provided with an opportunity to submit a responsive brief. As directed, Respondents have answered and Respondents have filed the relevant state court records. (Filing Nos. 9, 26 and 27.) Briefs have been submitted by Respondents and Petitioner. (Filing Nos. 32, 35 and 37.) Without waiving the statute of limitations defense, Respondents have elected not to submit affidavits regarding the tolling question.

Concluding that the decisions resolving some of the claims by the Nebraska courts are entitled to deference or that those claims otherwise lack merit and also that other claims have been procedurally defaulted, the Petition will be denied with prejudice. In doing so, the court declines to resolve the statute of limitations and related tolling questions because it is more expedient to decide this case on the other grounds advanced by Respondents.[1] *See, e.g.*, *Lewis v. Norris*, 454 F.3d 778, 780-81 (8th Cir. 2006) (declining to address tolling issue and resolving appeal on alternative grounds).

## *I. BACKGROUND*

The pertinent details are set forth in *State v. Lopez*, 544 N.W.2d 845 (Neb. 1996) (*Lopez I*) and *State v. Lopez*, 743 N.W.2d 351 (Neb. 2008) (*Lopez II*). On March 25, 1994, Norma E. Lopez ("Lopez") had a party. Lopez got so drunk that she urinated on herself. Lopez and Sotero Gandarilla started to argue. Lopez told her daughter to get bullets for her gun. The daughter responded that she could not find the bullets and then left to get help from the neighbors. The daughter returned with a neighbor and a gunshot was heard. Upon entering the bedroom, witnesses found Lopez holding a gun and Gandarilla's body on the floor. He was dead from a bullet wound to the neck. Lopez admitted to the neighbor that she shot and killed Sotero Gandarilla after he told her that "she was not . . . the women for [him]." Lopez made various other damaging statements to the police after they arrived. That night, Lopez

---

[1]Petitioner admits that she received her general equivalency diploma in 2001 (filing no. 35 at CM/ECF p. 1) and that she has had the assistance of another inmate in preparing her papers in this court. (Filing No. 33.) Those papers have been well-reasoned. (*See, e.g.,* Filing No. 35 (16-page typewritten brief).) Accordingly, Petitioner's Motion to Appoint Counsel will be denied. (Filing No. 33.) Moreover, since this court does not reach the statute of limitations and tolling questions, Petitioner's Motion for Discovery and Inspection, targeted at those issues, will be denied as well. (Filing No. 30.)

was advised of her *Miranda* rights. After another *Miranda* rights advisement the next morning, Lopez also told the police that "I shot him for no goddamn reason. Just for . . . being drunk and stupid I know." Lopez I, 544 N.W.2d at 850-51; Lopez II, 743 N.W.2d at 353-55.

Following a jury trial, Lopez was convicted of murder in the first degree and use of a weapon in the commission of a felony. She was sentenced to life in prison for the murder and 10 to 15 years in prison on the weapons charge. The Nebraska Supreme Court affirmed her conviction in an opinion dated March 15, 1996. The mandate was issued on March 26, 1996. (Filing No. 9-2, Attach. 1, at CM/ECF p. 2.) Lopez did not file a motion for state post-conviction relief until April 1, 2003. (Filing No. 9-5, Attach. 4, at CM/ECF p. 1.) On January 4, 2008, and following extensive proceedings in the district court, the Nebraska Supreme Court affirmed the denial of the motion for post-conviction relief.

Petitioner has been represented by a lawyer throughout the proceedings in state court and sometimes she has been represented by two lawyers. At trial, Petitioner was represented by Gerard A. Piccolo and Kevin K. Knake of the Hall County Public Defenders Office. (Filing No. 9-3 at CM/ECF p. 3.) On the direct appeal, Petitioner was represented by Kevin K. Knake and Thomas J. Gaul of the Hall County Public Defenders Office. (Filing No. 9-2.) J. Bruce Teichman filed the first post-conviction motion (Filing No. 9-5 at CM/ECF p. 1) and Robert R. Kortus of the Nebraska Commission on Public Advocacy filed the amended motion and represented Petitioner at an evidentiary hearing. (Filing No. 9-5 at CM/ECF p. 15.) Kortus represented Petitioner on the post-conviction appeal as well. (Filing No. 9-4.)

On May 1, 2008, Petitioner filed her habeas Petition in this court. (Filing No. 1.) Condensed and summarized, Petitioner asserted two related claims:

-3-

> Claim One: Petitioner's conviction was obtained as a result of ineffective assistance of counsel *because* Petitioner's counsel pursued inconsistent defenses, failed to inform Petitioner about a plea offer, failed to allow Petitioner to testify on her own behalf, failed to inform Petitioner of her right to remain silent during "any interview" with the State, failed to make proper objections, and failed to challenge the state's evidence.
>
> Claim Two: Petitioner's conviction was obtained by a violation of the privilege against self incrimination *because* Petitioner's decision to invoke the privilege was used by the prosecution to demonstrate that Petitioner had the ability to act voluntarily.

Where necessary, further details will be provided during the discussion of the claims. With that in mind, the court turns to those claims next.

## *II. ANALYSIS*

The court will first resolve the most significant issue considered by the state courts and that is whether Petitioner was prejudiced by the failure of her trial counsel to convey the prosecutor's offer to accept a plea to second degree murder. Following that decision, the court will address the other claims presented to the Nebraska courts and resolved on the merits. Finally, the court will address those claims that have been defaulted.

### *A. The Failure to Convey a Plea Offer*

Respondents concede, as they must, that Petitioner's claim that her trial counsel wrongly failed to communicate a plea offer was properly presented to the Nebraska courts. (Filing No. 32 at CM/ECF p. 15.) Indeed, the Nebraska Supreme Court fully

considered this claim on the merits and found that while it was true that counsel failed to convey a plea offer and while it was true that such a failure amounted to deficient performance, Petitioner was not prejudiced. *Lopez II*, 743 N.W.2d at 355-358.

The Nebraska Supreme Court described the historical facts this way:

> At the postconviction evidentiary hearing, the parties stipulated that an offer of second degree murder and use of a weapon had been communicated to defense counsel prior to trial. In overruling Lopez' motion with respect to this allegation, the district court, in keeping with this stipulation, found that Lopez' trial counsel failed to convey that agreement to Lopez. However, the district court concluded that Lopez was not prejudiced by this failure, as Lopez had not demonstrated that she would have accepted the offer.
>
> At the evidentiary hearing, lead counsel testified that he recalled the State's making one plea offer for first degree murder in which the State would decline to pursue the death penalty. Lead counsel indicated he did not believe this offer was a good offer, as he found it unlikely that Lopez would be sentenced to death, but he brought the offer to Lopez. He recalled that Lopez thought about the offer for a few days, but indicated that Lopez was "adamant" about rejecting the offer. Second chair counsel, in his deposition, echoed this, testifying that Lopez wanted to go to trial because she did not remember what happened at the time of the shooting. According to lead counsel, he and second chair counsel suggested later that Lopez offer to plead guilty to manslaughter and use of a weapon, but Lopez refused to let counsel make this offer to the State and insisted upon going to trial.
>
> Both counsel also testified that Lopez seemed to generally understand what was going on in connection with the charges filed against her. Lead counsel testified that he attempted to discuss with Lopez the events surrounding the murder, but that Lopez always indicated she did not remember what had happened. Lead counsel indicated that he met with Lopez once or twice a week for about an hour each time. It is not clear from the record, but it appears these meetings

> occurred over a somewhat lengthy period of time prior to trial. Lead counsel also testified that he went over police reports with Lopez; provided to Lopez copies of depositions taken in the case; and, as a matter of course, would have discussed the State's evidence and witnesses against Lopez in general terms, including forensic evidence. Lead counsel also indicated it was his recollection that Lopez was present at the formal hearings held in the case, which included a suppression motion.
>
> Lopez testified that only one offer, which involved serving between 20 and 40 years in prison, was communicated to her. Lopez specifically testified that no offer to plead guilty to second degree murder was ever communicated to her and that if such had been offered, she would have accepted.
>
> Lopez generally testified that she had expressed a desire to know what had happened at the time of Gandarilla's death, but that if she could have found out without going to trial, that would have been acceptable. Lopez testified that she received no copies of police reports or depositions and did not recall attending any hearings in the case. Lopez also indicated that even at the time of the postconviction evidentiary hearing, she was uncertain as to the difference between no contest and guilty pleas, and that had she understood the difference before trial, she would have pled no contest or guilty.

*Id.* at 356-57.

Applying *Strickland v. Washington*[2] and numerous other federal cases, the Nebraska Supreme Court, in a thorough and carefully written opinion by the Chief Justice, affirmed the decision of the post-conviction court and found that (1) Lopez'

---

[2] 466 U.S. 668 (1984) (establishing a two-part test for ineffective assistance of counsel claims; that is: (1) whether counsel's representation was constitutionally deficient, which requires a showing that counsel's performance fell below an objective standard of reasonableness and (2) whether there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been more favorable).

counsel failed to communicate to her an offer to accept a plea to second degree murder; (2) "such failure was deficient as a matter of law" and (3) "Lopez has not demonstrated that she would have accepted the plea agreement for second degree murder" and thus "Lopez cannot show she was prejudiced by counsel's failure to communicate the plea agreement." *Id.* at 357.

In particular, and agreeing with the post-conviction court, the Nebraska Supreme Court reasoned that since Lopez was adamant about going to trial and since she was unwilling to allow her lawyers to offer a plea to manslaughter, "Lopez' contention that she would have pled guilty" to second degree murder was "not credible." *Id.* at 358. Thus, there was no reasonable probability that the result would have been different had counsel not erred. *Id.*

*The Federal Law Regarding the Failure to Communicate a Plea Offer*

A defendant suffers a Sixth Amendment violation when his or her counsel fails to convey a plea offer, but the failure of a petitioner to show prejudice from such an error dooms a claim for post-conviction relief under the Constitution. *See*, *e.g.*, *Mickens v. United States*, 2005 W.L. 2038589 (E.D.N.Y. 2005) (finding a Sixth Amendment violation because counsel failed to communicate a plea offer but denying post-conviction relief because the movant failed to establish prejudice under *Strickland*). In order to establish "prejudice," the claimant must establish that "there was a 'reasonable probability' that counsel's failure to convey the offer would have changed the outcome." *Id.* at *9.

A post-conviction judge, when deciding whether the moving party would have accepted a plea if it had been communicated, may reject the testimony of the moving party that she would have accepted the offer if the judge concludes that the testimony is not credible because it is "self-serving." *Id.* at *3. The appellate courts generally defer to these credibility findings. *See*, *e.g.*, *Mickens v. United States*, 257 F. App'x

461, 462 (2nd Cir. 2007) (affirming denial of post-conviction relief where trial court found that plea offer had not been communicated but also finding no prejudice; stating that the post-conviction "court, having the opportunity to assess [movant's] credibility, disbelieved his testimony that he would have accepted the plea agreement. We see no reason to disturb this conclusion."); *Riggins v. Norris*, 238 F.3d 954, 955 (8th Cir. 2001) (holding that a "state trial court [is] certainly entitled to disbelieve [a Petitioner's] self-serving testimony" regarding his claim that a plea offer had not been conveyed to him).

*The Statutory Standard For Deference*

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the facts and the law. *See* 28 U.S.C. § 2254(d). With regard to the deference owed to factual findings of a state court's decision, a federal court is bound by those findings unless the state court made a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Regarding the deference owed to the conclusions of law, a federal court may not grant a writ of habeas corpus unless the state court's legal conclusion "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

*The Supreme Court's Recent Emphasis on Deference*

The Supreme Court has very recently emphasized that the deference due the state courts applies with vigor to decisions involving ineffective assistance of counsel

claims. *Knowles v. Mirzayance*, —U.S.—, 2009 WL 746274 (March 24, 2009) (reversing the Ninth Circuit Court of Appeals and holding that the decision of the California Court of Appeals, that the defendant was not deprived of effective assistance of counsel when his attorney recommended withdrawing his insanity defense during second phase of trial, was not contrary to or an unreasonable application of clearly established federal law; also concluding, among other things, that there was no reasonable probability that, but for counsel's alleged unprofessional error, the result of the proceeding would have been different).

The Justices stressed that under the *Strickland* standard the state courts have a great deal of "latitude" and that "leeway" presents a "substantially higher threshold" for a federal habeas petitioner to overcome. Thus:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Schriro*, supra, at 473, 127 S.Ct. 1933. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

*Id.* at *8.

*The "Prejudice" Decision Was Not Unreasonable*

The Nebraska Supreme Court, affirming the post-conviction judge who heard the evidence, determined that Petitioner's testimony was not credible when she said that she would have accepted the offer of a plea to second degree murder. *Lopez II*, 743 N.W.2d at 358. Thus, there was no reasonable probability that the result–a trial,

-9-

a guilty verdict and a life sentence–would have been different if counsel had properly conveyed the offer to Lopez. *Id.* Among other things, the Nebraska judges relied upon the fact that both of Petitioner's lawyers testified that she was insistent about going to trial and that she refused to allow them to offer a plea to manslaughter. *Id.*

Respondents argue that the foregoing findings of fact and conclusions of law are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts. In response, Lopez argues, as she did before the Nebraska courts, that her testimony should have been accepted at face-value. (Filing No. 35 at CM/ECF pp. 12-13.) The court agrees with Respondents that the factual findings and legal conclusions of the Nebraska courts are not unreasonable, that this court must accord them binding deference, and that the state courts were not required to accept Petitioner's testimony uncritically. As a result, Lopez' claim must be denied even though she has established that her trial counsel committed a significant professional error.

## B. The Failure to Object to the Prosecutor's Closing Argument

Respondents concede that Petitioner's claim that her trial counsel failed to object to the prosecutor's closing argument, improperly commenting upon Petitioner's silence during certain questioning at the police station, was considered by the Nebraska courts. (Filing No. 32 at CM/ECF p. 29-31.) In fact, the Nebraska Supreme Court decided that several brief remarks by the prosecutor were improper and trial counsel did not object to them. The Nebraska Supreme Court decided that, even assuming that counsel's failure to object was deficient, there was no prejudice since the evidence against Petitioner was so strong. *Lopez II*, 743 N.W.2d at 359-360.[3] The Nebraska Supreme Court emphasized that evidence established beyond a

---

[3]The prosecutor stated:

reasonable doubt that: (1) Lopez and the victim were arguing; (2) Lopez asked her daughter to "find the bullets"; (3) Lopez admitted her guilt to the neighbor; and (4) on several occasions, Lopez made damaging admissions to the police. *Id.* at 360. As a result, "Lopez has not shown that she was prejudiced by any deficiency by counsel in failing to object" to the prosecutor's remarks. *Id.*

Respondents assert that these findings and conclusions must be accorded binding deference. Again, the court agrees. The court cannot state that the decision of the Nebraska Supreme Court was unreasonable and therefore this claim must be denied. *See, e.g., Kellogg v. Skon*, 176 F.3d 447, 451-452 (8th Cir. 1999) (affirming denial of habeas corpus petition where counsel's failure to object to prosecutor's belittling of presumption of innocence and name-calling (the defendant was a "monster," a "sexual deviant" and a "liar") did not deny defendant effective assistance of counsel, given that the verdict would not have changed had prosecutor not engaged in such behavior, and thus the result would not have been different had objection been made and instruction to disregard given; the Eighth Circuit concluded: "The weight of the evidence was heavy, and there is no reasonable probability that

---

When Sergeant Ochsner reads her her Miranda rights, she says, "I understand them." No evidence to the contrary.

When she gets to the jail, if you'll remember testimony of the Corrections Officer Gorman and Lieutenant Castleberry, Corrections Officer Gorman tells you that when they are trying to ask a question and she won't answer, what does she do, in fact? If Castleberry asks her a question, she turns around and faces Gorman and vice versa.

She knows she doesn't have to answer questions, and she won't, ....

*Id.* at 359.

-11-

the verdict would have changed absent the comments, even considering the cumulative effect of the prosecutor's remarks.").

### *C. Other Claims Presented to the Nebraska Courts and Summarily Resolved*

Respondents concede (filing no. 32 at CM/ECF pp. 14, 16) that Petitioner presented other ineffective assistance of counsel claims to the Nebraska courts and those claims are that (1) counsel was ineffective for pursuing inconsistent defenses (in opening statements); (2) counsel was ineffective for failing to challenge the prosecutor's allegation that Petitioner's use of the word "asshole" was evidence of guilt; and (3) counsel was ineffective for failing to challenge the fingerprint expert. The Nebraska Supreme Court denied these claims on the merits but in a summary fashion. *Lopez II*, 743 N.W.2d at 360 ("Lopez makes several other contentions regarding the alleged ineffectiveness of counsel. We have reviewed the record and conclude those allegations are also without merit.")

Because the Nebraska Supreme Court explicitly denied these ineffective assistance of counsel claims on the merits, the resolution of those claims by the Nebraska Supreme Court is entitled to deference even though the explanation was summary in nature. *See, e.g.*, *Weaver v. Bowersox*, 438 F.3d 832, 839 (8th Cir. 2006) (holding that the state court's summary disposition of claims on the merits is entitled to deference even though the state court did not specifically discuss the claims) (citing *Brown v. Luebbers,* 371 F.3d 458, 462 (8th Cir. 2004) (en banc)). Furthermore, and as Respondents point out, given the overwhelming nature of the evidence against her, Lopez could not establish "prejudice" even if her counsel erred as she claims. Thus, if this court were to resolve these arguments de novo, without giving the Nebraska courts any deference, these claims still fail under *Strickland*.

## D. *The Defaulted Claims*

The Respondents assert, and then carefully explain (filing no. 32 at CM/ECF pp.12-17), that all the remaining claims have been procedurally defaulted. The Petitioner does not seriously dispute Respondents' contention. (Filing No. 35 at CM/ECF p. 11 (acknowledging Respondents' procedural default argument and stating that "Petitioner believes all her claims are viable[,]" but electing, "for the sake of argument[,]" to brief only two claims–the failure to communicate the plea offer and the failure to object to the prosecutor's closing argument.)

A habeas petitioner must first fairly present the merits of each claim he or she wishes to litigate in federal court to the state courts or the federal court is generally prohibited from considering such a claim under the provisions of 28 U.S.C. § 2254(b)(1). A claim is properly presented when the state courts are given a "'fair opportunity' to apply controlling legal principles to the facts bearing upon [the claim]." *Anderson v. Harless*, 459 U.S. 4, 6, (1982) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 277-78 (1971). In Nebraska, a "fair opportunity" means that the merits of each habeas claim must ultimately be presented to the Nebraska Supreme Court. *Akins v. Kenney*, 410 F.3d 451, 454 (8th Cir. 2005) (holding that Nebraska law required habeas petitioner to file a petition for further review with the Nebraska Supreme Court in order to exhaust his available state court remedies after his conviction was affirmed by the Nebraska Court of Appeals; state rules indicated that such a procedure was considered the ordinary process because mandate could not issue until the 30-day period for filing such a petition had lapsed) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) (requiring a petitioner to exhaust one complete round of the State's established appellate review process)).

As a general rule, Nebraska courts "will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion.

The need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity." *State v. Moore*, 718 N.W.2d 537, 542 (Neb. 2006) (holding that constitutional challenge to statutorily mandated method of execution in death penalty case was procedurally barred) (internal citation omitted), *cert. denied*, 549 U.S. 1171 (2007). In Nebraska, if a party has been allowed to present an ineffective assistance of counsel claim in a post-conviction action, that party cannot file another such action by changing the assertion about how the lawyer erred. *See, e.g.*, *State v. Luna*, 434 N.W.2d 526, 528 (Neb. 1989) (holding that district court's order denying an evidentiary hearing and overruling prisoner's motion for post-conviction relief alleging ineffective assistance of counsel was not erroneous, where defendant had previously made a motion for post-conviction relief alleging ineffective assistance of counsel which was denied, even though allegations in new motion were grounded in different errors allegedly committed by counsel as compared with those cited in prior post-conviction relief attempt).

If a petitioner fails to "fairly present" her claim to the state courts, and she can no longer present the claim to the state courts because, for example, a state court rule prohibits serial litigation, then the federal court will be precluded from considering the claim unless the petitioner fits into one of two exceptions. *See, e.g.*, *Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir.2006) (stating that alleged ineffective assistance of counsel regarding the failure to call mother and grandmother as witnesses during death penalty phase of trial was procedurally defaulted because that claim had not been raised in state court, because the habeas petitioner could not return to state court and because the habeas petitioner had not excused the default). That is, the petitioner must demonstrate "cause and prejudice" or a "miscarriage of justice" (like "actual innocence") in order to prosecute a claim when that claim has not been, and cannot be, fully and fairly asserted in the state courts. *Id.*

In summary, Lopez never timely presented the merits of the remaining claims to the Nebraska Supreme Court and she cannot do so now. She has not excused her

-14-

default by showing that she is actually innocent or that there was some other miscarriage of justice. Consequently, Petitioner's remaining claims must be denied because they are procedurally defaulted.

IT IS THEREFORE ORDERED that:

1. Norma E. Lopez' Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus By a Person In State Custody (filing no. 1) is denied with prejudice.

2. A separate judgment will be entered in accordance with this Memorandum and Order.

3. Petitioner's Motion to Appoint Counsel (filing no. 33) and Motion for Discovery and Inspection (filing no. 30) are denied.

April13, 2009.                    BY THE COURT:


                                               s/ Joseph F. Bataillon
                                               Chief United States District Judge